# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

SAMUEL EDWARDS,

Plaintiff,

vs.

AMY MILLER, Warden, et al.,

Defendants.

Case No.       15cv0174-LAB (JMA)

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

This Report and Recommendation is submitted to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.3 of the United States District Court for the Southern District of California.

## I.    Introduction

Plaintiff Samuel Edwards (hereinafter "Plaintiff"), is a state prisoner proceeding pro se and in forma pauperis with a Second Amended Complaint ("SAC") pursuant to 42 U.S.C. § 1983.  (ECF No. 10.)  Plaintiff alleges his federal due process rights were violated in connection with prison disciplinary proceedings which arose when he received a package of legal mail containing marijuana.  (SAC at 6.)  He alleges he spent a total of five months and thirteen days in administrative segregation ("Ad-Seg") awaiting a decision from the District Attorney whether to file criminal charges, was released from Ad-Seg about a month after the District Attorney declined to prosecute due to insufficient

evidence, and was then found not guilty at a prison disciplinary hearing of possession of a controlled substance with intent to distribute.  (Id. at 15-20.)  Plaintiff alleges his Fourteenth Amendment right to due process was violated because he did not receive the procedural protections to which he was entitled regarding his placement and retention in Ad-Seg, and because he did not receive a timely disciplinary hearing.  (Id.)  He names as Defendants the Warden of the prison in both her official and individual capacities, as well as an Associate Warden and eleven Correctional Officers in their official capacities only. (Id. at 2-5.)  He seeks an injunction preventing Defendants "from taking any retaliatory action against Plaintiff," compensatory damages in the amount of two million dollars, and punitive damages to be determined by the Court.  (Id. at 12.)

Defendants have filed a Motion to Dismiss the Second Amended Complaint pursuant to FED.R.CIV.P. 12(b)(6).  (ECF No. 36.)  Defendants contend: (1) they are entitled to Eleventh Amendment immunity because they are named in their official capacities; (2) Plaintiff has not stated a due process claim because he has not identified a protected liberty interest in remaining free of a temporary stay in Ad-Seg; and (3) even if he could identify such a liberty interest, he received all the process he was due in connection with his placement and retention in Ad-Seg and in his disciplinary hearing. (Defendant's Motion to Dismiss ["MTD"] at 6-20.)

Plaintiff has filed an Opposition to Defendant's Motion to Dismiss, to which he has attached his declaration.  (ECF No. 39.)  Plaintiff concedes that all Defendants, except the Warden in her individual capacity, are entitled to Eleventh Amendment immunity, and requests they be dismissed from this action.  (Plaintiff's Opposition ["Opp."] at 21.) He argues that he has sufficiently alleged a protected liberty interest in remaining free of Ad-Seg, and argues that he has sufficiently alleged he was deprived of that liberty interest without due process of law by the Warden acting in her individual capacity.  (Opp. at 22-31.)  Defendants requested and were granted an extension of time to file a Reply to Plaintiff's Opposition (ECF No. 40-41), but have not done so.

For the following reasons, the Court finds all Defendants, except the Warden in her individual capacity, are entitled to Eleventh Amendment immunity and should be dismissed from this action.  The Court also finds Plaintiff has not alleged facts sufficient to show he was deprived of a protected liberty interest in remaining free of his temporary stay in Ad-Seg, but even if he could so allege, it is clear he was provided all the process he was due with respect to the deprivation of that liberty interest and in connection with his disciplinary hearing.  The Court therefore recommends granting Defendants' Motion to Dismiss.  In addition, because it is clear Plaintiff cannot further amend his complaint to allege a violation of his federal due process rights, the Court recommends dismissing the Second Amended Complaint with prejudice.

## II.    Plaintiff's Allegations

Plaintiff was housed at Centinela State Prison at all relevant times.  (SAC at 1.)  On November 7, 2013, he was called to receive his legal mail.  (Id. at 6, 14-15.)  Defendant Correctional Officer Trujillo opened a box of legal mail addressed to Plaintiff, and found what appeared to be small plastic packets containing marijuana and tobacco hidden between the cardboard flaps at the bottom of the box.  (Id. at 6, 15.)  Plaintiff was then placed in handcuffs and escorted to Ad-Seg without receiving or signing the required CDCR 114-D Ad-Seg placement notice.  (Id.)  An Institutional Classification Committee ("ICC") hearing was held seven days later, on November 14, 2013, at which Plaintiff was not allowed to have an investigative employee assigned to assist him in investigating the case, and was not allowed "to postpone the hearing in order to make a proper defense."  (Id.)  He alleges that the denial of those procedural protections were caused by Warden Miller, who appeared at the hearing and told the members of the ICC those procedures were not available to Plaintiff because the case was submitted to the District Attorney's office for criminal prosecution.  (Id.)

A second CDCR 114-D Ad-Seg placement notice was issued on December 23, 2013, which Plaintiff refused to sign, which notified him he was being retained in Ad-Seg pending investigation into the charge of conspiracy to introduce a controlled substance

into the prison with intent to distribute.  (Id. at 15.)  On March 18, 2014, the District Attorney decided not to pursue criminal charges due to insufficient evidence.  (Id. at 15-16.)  Plaintiff was released from Ad-Seg on April 16, 2014, and a disciplinary hearing was held on April 18, 2014, where he was found not guilty of the charge of possession of a controlled substance with intent to distribute due to insufficient evidence.  (Id. at 6, 16.)  He alleges the disciplinary hearing took place one day late in violation of prison regulations which require the hearing to take place within 30 days of the decision not to prosecute.  (Id.)  Plaintiff thereafter unsuccessfully sought monetary compensation through the prison grievance procedures and from the Victim Compensation and Government Claims Board.  (Id. at 6, 11.)

Plaintiff alleges the conditions of his confinement in Ad-Seg differed from those in the general population, and therefore gave rise to a liberty interest protected by the Due Process Clause of the Fourteenth Amendment, because: (1) many of his personal items were confiscated and some were never returned; (2) family contact visits were not available; (3) he was removed from a vocational program where he had been earning custody credits and lost the privilege of participating in a self-help group for veterans; (4) the conditions were unsanitary; (5) security measures were harsher; and (6) he was denied adequate medical and mental health care for Post-Traumatic Stress Disorder arising from his military service in Iraq.  (Id. at 18-20.)  He alleges his due process rights were violated by: (1) Warden Miller, who is named in both her official and individual capacities, for denying him procedural protections at the November 14, 2013, ICC hearing; (2) Associate Warden Sidhu and Correctional Officers Gibson, Courtnier, Carranza and Castillo, all named in their official capacities only, for "failing to act" while members of the ICC; and (3) Correctional Officers Hill, Trujillo, Greenwood, Mendez, Hopper and Lam, all named in their official capacities only, for "unlawfully confining him into administrative segregation."  (Id. at 7-8.)  There are no specific allegations against the only remaining Defendant, Correctional Officer Daubach, who is named only in his official capacity.  (Id. at 5, 17.)

## III.   Defendants' Motion to Dismiss

Defendants seek dismissal pursuant to FED.R.CIV.P. 12(b)(6) on the grounds they are entitled to Eleventh Amendment immunity from suit because they are sued in their official capacities; that Plaintiff has failed to state a due process claim because he has not alleged he was deprived of a protected liberty interest in remaining free of a temporary stay in Ad-Seg; and that even if he could, he was given all the process he was due in connection with his placement and retention in Ad-Seg, and in his disciplinary hearing. (MTD at 9-24.)

Plaintiff concedes all Defendants, other than Warden Miller in her individual capacity, should be dismissed on Eleventh Amendment immunity grounds, but argues he has sufficiently alleged a protected liberty interest in avoiding placement in Ad-Seg because the conditions there severely deviated from the conditions in the general population, and that he has sufficiently alleged he did not receive all the process he was due in connection with his placement there and in his subsequent disciplinary hearing. (Opp. at 21-31.)

### A.   FED.R.CIV.P. 12(b)(6) Standard of Review

"A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1121-22 (9th Cir. 2008), quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Because "Iqbal incorporated the Twombly

pleading standard and <u>Twombly</u> did not alter courts' treatment of pro se filings, [courts] continue to construe pro se filings liberally when evaluating them under <u>Iqbal</u>." <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010).

### B. Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution prohibits federal jurisdiction over federal claims against a state or state agency unless the state or agency consents to the suit. <u>See</u> <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44, 53-54 (1996). The California Department of Corrections is a state agency entitled to Eleventh Amendment immunity. <u>Bennett v. California</u>, 406 F.2d 36, 39 (9th Cir. 1969). Although a limited exception to this doctrine applies to claims for prospective injunctive relief regarding ongoing violations of federal law, <u>see</u> <u>Verizon Maryland Inc. v. Public Service Commission of Maryland</u>, 535 U.S. 635, 645 (2002), there are no allegations that the alleged constitutional violation of which Plaintiff complains is ongoing.

While the Eleventh Amendment bars a prisoner's section 1983 claims against state actors sued in their official capacities, <u>Will v. Michigan</u>, 491 U.S. 58, 66 (1989), it does not bar damage actions against state officials in their personal or individual capacities. <u>Hafer v. Melo</u>, 502 U.S. 21, 31 (1991); <u>Pena v. Gardner</u>, 976 F.2d 469, 472-73 (9th Cir. 1992). When a state actor is alleged to have violated federal law and is sued for damages under section 1983 in his or her individual or personal capacity, there is no Eleventh Amendment bar, even if state law provides for indemnification. <u>Ashker v. California Department of Corrections</u>, 112 F.3d 392, 395 (9th Cir. 1997).

Here, Plaintiff clearly indicates an intent to sue Defendant Warden Miller in both her individual and official capacities, and the remaining Defendants in their official capacities only. (SAC at 2-5.) Plaintiff concedes all Defendants, other than Warden Miller in her individual capacity, are immune from suit because he has named them in their official capacities, and requests their dismissal. (Opp. at 21.)

The Court agrees with the parties that Plaintiff cannot maintain an action against Defendants for money damages in their official capacities. Although Plaintiff seeks an

injunction against the Defendants to prohibit future retaliatory actions against him, there are no allegations the Defendants have or intend to retaliate against him, and such an unsupported and speculative claim cannot form the basis for injunctive relief. See Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009) ("To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.")

Thus, Plaintiff has sued all Defendants, other than Warden Miller, in their official capacities only, and seeks only monetary damages. The Court recommends granting in part the Defendant's Motion to Dismiss, and dismissing Plaintiff's claim for money damages on Eleventh Amendment grounds against all Defendants other than Defendant Warden Miller in her individual capacity. Twombly, 550 U.S. at 570 (a motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."); Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

The Court has "an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). Even assuming that under a liberal construction of the Second Amended Complaint, Plaintiff's allegations could be read as having been directed against all Defendants in their individual capacities as well as their official capacities, the Court would still recommend dismissal of this action. For the reasons set forth below, it is evident Plaintiff has not plausibly alleged, and cannot further amend the Second Amended Complaint to plausibly allege, a federal due process claim, because it is clear he received all the process he was due in connection with his placement and retention in Ad-Seg and in his disciplinary hearing.

### C.    Fourteenth Amendment Due Process Claim

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriving any person of life, liberty, or property, without the due process of law." U.S. CONST. AMEND. XIV.  The procedural guarantees of due process apply only when a constitutionally-protected liberty or property interest is at stake.  Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974).  In order to invoke the protection of the Due Process Clause, Plaintiff must first establish the existence of a liberty interest.  Sandin v. Conner, 515 U.S. 472 (1995).  Liberty interests may arise from the Due Process Clause itself or from state law.  Hewitt v. Helms, 459 U.S. 460, 466–68 (1983).  While a liberty interest can arise from state law or prison regulations, due process protections are implicated only if Plaintiff plausibly alleges facts showing the Defendants: (1) restrained his freedom in a manner not expected from his sentence, and (2) "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."  Sandin,  515 U.S. at 484.

### 1.  Plaintiff has not alleged a liberty interest in remaining free of Ad-Seg

"Typically, administrative segregation in and of itself does not implicate a protected liberty interest."  Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003), citing Sandin, 515 U.S. at 486 ("disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody.")  "Rather than invoking a single standard for determining whether a prison hardship is atypical and significant, we rely on a 'condition or combination of conditions or factors (that) requires case by case, fact by fact consideration.'"  Id., citing Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996).  The Court looks to: "(1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority, (2) the duration of the condition, and the degree of restraint imposed, and (3) whether the state's action will invariably affect the duration of the prisoner's sentence." Id., quoting Sandin, 515 U.S. at 486-87.

In <u>Sandin</u>, the United States Supreme Court held that a thirty-day confinement in disciplinary segregation did not work a major disruption in the inmate's environment, despite the inmate having to remain in his cell wearing leg irons and waist chains other than 50 minutes per day for exercise and shower, because that degree of confinement was "within the range of confinement normally expected for one serving an indeterminate term of 30 years to life," <u>Sandin</u>, 515 U.S. at 487, and did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." <u>Id.</u> at 485. Ten years after <u>Sandin</u> was decided, the Supreme Court noted that, "the Courts of Appeal have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 223 (2005). The Court in <u>Wilkinson</u> found an inmate's assignment to a "Supermax facility . . . with highly restrictive conditions, . . . designed to segregate the most dangerous prisoners from the general prison population," and which included prohibitions on "all human contact" including conversation between cells, limitations on exercise to an hour a day in a small indoor room, disqualified inmates from parole eligibility, was indefinite in duration, and permitted only one initial 30-day review and annual reviews thereafter, "impose[d] an atypical and significant hardship under any plausible baseline." <u>Id.</u> at 223-24.

Plaintiff alleges the conditions in Ad-Seg were atypical of his ordinary prison life, and imposed significant hardships on him, so as to give rise to a protected liberty interest, because: (1) his personal items were confiscated; (2) family contact visits were unavailable; (3) he was prevented from working, earning custody credits and participating in a self-help group; (4) the conditions were unsanitary; (5) security measures were harsher; and (6) he was denied adequate medical and mental health care for Post-Traumatic Stress Disorder arising from his military service. (SAC at 18-20.) Defendants argue Plaintiff has not identified any "atypical and significant hardship" as it relates to the "ordinary incidents of prison life" as required by <u>Sandin</u> so as to give rise to a protected liberty interest. (MTD at 11-14.)

For the following reasons, the Court finds Plaintiff's allegations regarding his temporary placement in Ad-Seg are much closer to conditions regarding the <u>Sandin</u> temporary stay, which did not give rise to a protected liberty interest, than they are to the conditions regarding the <u>Wilkinson</u> permanent and restrictive stay, which did.

**a) confiscation of personal items**

Plaintiff alleges his "hot pot to cook his food with; fan; headphones; open food item; shower equipments; certain legal material, and personal letters, were either lost or damaged" while he was in Ad-Seg.  (SAC at 18.)  Plaintiff has not shown the deprivation of his personal items while in Ad-Seg amounted to a "major disruption in his environment," or "a dramatic departure from the basic conditions of [his] sentence." <u>Sandin</u>, 515 U.S. at 485-86 (placement in Ad-Seg for 30 days where prisoner had to remain alone in his cell wearing leg irons and waist chains, with the exception of 50 minutes per day for exercise and shower, were not "the type of atypical, significant deprivation [that] might conceivably create a liberty interest."); <u>see also</u> <u>Resnick v. Hayes</u>, 213 F.3d 443, 448 (9th Cir. 2000) (holding placement in Ad-Seg was "within the range of confinement to be normally expected by prison inmates in relation to the ordinary incidents of prison life," even with limited access to showers and the library, and limited recreational opportunities.)  In addition, there are no plausible allegations that the confiscation of Plaintiff's property, or any of his allegations regarding the conditions of his confinement (other than the ability to earn custody credits discussed below), "will invariably affect the duration of his sentence."  <u>Sandin</u>, 515 U.S. at 487.

**b) contact family visitation**

Plaintiff alleges inmates in the general population "have contact visitation with family and friends, can hug and kiss in greeting for a brief period at the beginning and end of the visit," but Ad-Seg inmates are not permitted contact visitation.  (SAC at 19.) The Supreme Court has recognized that while the right to visitation or freedom of association is not "altogether terminated by incarceration or is always irrelevant to claims made by prisoners," it is expected that "some curtailment of that freedom" will happen

in the prison context. <u>Overton v. Bazzetta</u>, 539 U.S. 126, 131-32 (2009). The curtailment of contact visitation during Plaintiff's stay in Ad-Seg does not give rise to a protected liberty interest under <u>Sandin</u> because the Supreme Court has specifically found that the "withdrawal of visitation privileges for a limited time . . . as a regular means of effecting prison discipline" is not a "dramatic departure from accepted standards for conditions of confinement." <u>Id.</u> at 137, citing <u>Sandin</u>, 515 U.S. at 485; <u>see also</u> <u>Gerber v. Hickman</u>, 291 F.3d 617, 621 (9th Cir. 2002) (en banc) ("[I]t is well-settled that prisoners have no constitutional right while incarcerated to contact visits.")

### c) prison work/earning custody credits

Plaintiff alleges he was prevented from working and therefore unable to earn custody credits during his stay in Ad-Seg, and lost the ability to participate in a self-help group for veterans. (SAC at 18.) Plaintiff does not have a constitutionally-protected liberty interest in earning custody credits. <u>Wolff</u>, 418 U.S. at 557. Plaintiff has not shown that California law has created a liberty interest in earning work credits. <u>See</u> Cal. Penal Code § 2933(c) (stating that the ability to earn work time custody credits "is a privilege, not a right.") Even if Plaintiff could make such a showing, a loss of the ability to earn custody credits is too attenuated to find that his placement in Ad-Seg "will invariably affect the duration of [his] sentence." <u>Sandin</u>, 515 U.S. at 487. In addition, the Ninth Circuit has consistently held that "the Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment.'" <u>Walker v. Gomez</u>, 370 F.3d 969, 973 (9th Cir. 2004), quoting <u>Ingram v. Papalia</u>, 804 F.2d 595, 596 (10th Cir. 1986), and citing <u>Baumann v. Arizona Dep't of Corrections</u>, 754 F.2d 841, 846 (9th Cir. 1985).

### d) unsanitary conditions

Plaintiff alleges that the cells in Ad-Seg are "either too cold or too hot," and that the "showers are unsanitary. Cockroaches are rampant. Chemicals used in the only drinking water leaves your mouth dry. . . . [and the food is handled] without the use of hairnets and sanitary gloves." (SAC at 19-20.) Although excessively or prolonged

unsanitary conditions in a prison have been found to be unconstitutional, Plaintiff's allegations do not rise to that level.   Conditions of an unsanitary cell are not unconstitutional where there is no showing of a risk of physical harm caused by the unsanitary conditions, and where the alleged unsanitary conditions were not severe and prolonged.  Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995) ("lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment.")  Plaintiff has failed to allege the sanitation in Ad-Seg caused him any physical harm or was severe enough to constitute a significant departure from the range of ordinary confinement so as to give rise to a protected liberty interest.  Id.; c.f. Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985) ("The health hazard caused by vermin at the penitentiary is exacerbated by the plumbing and ventilation inadequacies.  Such vermin infestation, properly considered in the light of unsanitary conditions such as standing water, flooded toilets and sinks, and dank air, is an unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.")

### e)  medical and mental health care

Plaintiff alleges he "was denied treatment to see an Neurologist for possible traumatic brain injuries received in Iraq during service," referring to Exhibit B to the SAC.  (SAC at 20.)  Exhibit B consists of documents indicating Plaintiff was seen by a medical doctor on December 5, 2012, in response to a request that he had been suffering headaches since 2004 due to his service in Iraq.  (SAC Ex. B at 1 [ECF No. 10 at 23].)  The record indicates Plaintiff did not have symptoms when he was examined by the doctor during that visit, was offered Tylenol or Motrin which he declined, and was referred for mental health treatment for Post-Traumatic Stress Disorder.  (Id. at 2-3 [ECF No. 10 at 24-25].)  The same sequence of events occurred on May 13, 2013, but without a referral for mental health treatment.  (Id. at 5-7 [ECF No. 10 at 27-30].)

Defendants contend that these documents do not support Plaintiff's allegation that he was not provided medical or mental health services while in Ad-Seg because they reference events prior to his November 2013 placement there.  (MTD at 14.)  Defendants

also point out that Plaintiff does not allege that any named Defendant in this action was personally responsible for denying him medical or mental health services while he was in Ad-Seg.  (Id.)  Finally, Defendants indicate that the California Code of Regulations provides that medical and mental health services are available to all prisoners regardless of their housing designation.  (Id.)

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976).  Here, however, Plaintiff has alleged that he was provided with medical attention and was referred for mental health services for complaints of Post-Traumatic Stress Disorder, albeit prior to his placement in Ad-Seg. To the extent Plaintiff intended the documents attached to the SAC to show that such treatment was available to him in general population but not in Ad-Seg, there are no plausible allegations that he requested and was denied medical or mental health services while in Ad-Seg or because of his placement in Ad-Seg.  His Opposition merely repeats the unsupported allegation that his requests for medical and mental health attention while in Ad-Seg were ignored, and in fact show he was offered but refused mental health services when he was first placed in Ad-Seg.  (See Opp. at 28-29 & Exs. B-D [ECF No. 39 at 47-114]; Plaintiff's Decl. at ¶ 16 [ECF No. 39 at 155].)  Plaintiff has not alleged that Defendants failed to abide by prison regulations which make medical and mental health services available to prisoners in Ad-Seg, and has set forth no specific allegations regarding when he requested and was refused medical attention while housed in Ad-Seg.

### f) enhanced security measures

Plaintiff alleges that "[a]ll movements outside the cell are in restraints escorted by prison officials holding clubs in their hand. . . . Prison officials subject inmates to nude searches in front of female staff.  Prison officials prepare and serve inmates below the required servings of 2500 calories. . . . All incoming inmates are placed on suicide watch for 21 days, which staff only monitored at night from 8:30 p.m. to 5:30 a.m.  Inmates are startled throughout the night by prison officials waking out of their sleep to turn off the

20 minute alarm clock buzzer, so they can count the inmates on intake suicide watch by using an electronic sensor device that they often jab into cell door hard and the sensor beeps, disturbing sleep and causing anxiety and restlessness." (SAC at 19-20.)  Plaintiff has failed to plausibly allege that these conditions caused a "major disruption in his environment" or "a dramatic departure from the basic conditions of [his] sentence." Sandin, 515 U.S. at 485-86.

### g)  summary

Plaintiff has failed to allege the conditions of his confinement in Ad-Seg were not "within the range of confinement normally expected," Sandin, 515 U.S. at 487, or presented "a dramatic departure from the basic conditions of [his] sentence." Id. at 485. Nor has he shown the conditions failed to comport "with the prison's discretionary authority," that "the duration of the condition(s)" or "the degree of restraint imposed" were unusually harsh, or that "the state's action will invariably affect the duration of the [his] sentence."  Keenan, 83 F.3d at 1089, quoting Sandin, 515 U.S. at 486-87.

Accordingly, Plaintiff has failed to allege he was deprived of a liberty interest in remaining free of his temporary stay in Ad-Seg, and has consequently failed to allege a violation of his federal due process rights.  Sandin, 515 U.S. at 485-87.  The Court recommends granting Defendants' Motion to Dismiss the Second Amended Complaint on this basis.  Johnson, 534 F.3d at 1121-22 ("A Rule 12(b)(6) dismissal may be based on . . . 'the absence of sufficient facts alleged under a cognizable legal theory.'"), quoting Balistreri, 901 F.2d at 699.

### 2.  Plaintiff received all the process he was due

Finally, assuming arguendo Plaintiff has alleged, or could amend the Second Amended Complaint to allege, conditions in Ad-Seg which represent such a dramatic departure from the basic conditions of his sentence so as to give rise to a liberty interest in remaining free of his temporary placement there, it is clear he received all the process he was due in connection with the deprivation of any such liberty interest.

///

Plaintiff alleges he was initially placed in Ad-Seg without receiving or signing the required CDCR 114-D Ad-Seg placement notice. (SAC at 6.) He alleges an ICC hearing was held seven days later, on November 14, 2013, at which he was denied his right to have an investigative employee assist him in investigating the case, and that he was denied his right to postpone the hearing in order to prepare a proper defense. (Id.) Finally, he alleges his disciplinary hearing took place one day late under prison regulations which require the hearing to be held within 30 days of the decision not to prosecute. (Id.)

Defendants contend due process protections are minimal for placement and retention in Ad-Seg, and that all that is required is an informal, non-adversarial hearing held within a reasonable time where the prisoner is informed of the reason for his placement and is allowed to present his views. (MTD at 15.) Defendants contend Plaintiff's allegation that he did not receive the required CDCR 114-D Ad-Seg placement notice form is refuted by Plaintiff's own allegation, and his own exhibit, indicating the form was issued, but that he refused to sign the document. (Id. at 16, citing SAC Ex. A at 9 [ECF No. 10-1 at 10].) Defendants contend Plaintiff's allegations reveal he was provided a hearing seven days after his initial placement in Ad-Seg, and that he cannot plausibly allege he was not aware of why he was placed in Ad-Seg because he was escorted there in handcuffs by Defendant Correctional Officer Trujillo immediately after Trujillo had Plaintiff sign for a package of legal mail which appeared to contain marijuana. (Id. at 15-16.) Defendants contend that although Plaintiff alleges he was denied his right to postpone the hearing and denied the right for staff assistance, he had no such rights, but that in any case he did not request staff assistance. (Id. at 16-18.) Finally, Defendants contend that although the April 18, 2014 disciplinary hearing was held one day late under prison regulations which required it to be held within 30 days of the decision not to criminally prosecute Plaintiff, all federal due process requirements were provided in connection with the hearing. (Id. at 18-20.)

/ / /

### a) initial placement in Ad-Seg

When a prisoner is segregated for administrative reasons, prison officials are required to: (1) conduct an informal nonadversary review of the evidence justifying the decision to segregate the prisoner within a reasonable time after placing the prisoner in administrative segregation; (2) provide the prisoner with some notice of the charges or their reasons for placing him in segregation; and (3) give the prisoner an opportunity to present his views in response to his placement. Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986), abrogated in part on other grounds by Sandin, 515 U.S. 472. Here, Plaintiff's own allegations and exhibits attached to the SAC show that he received these procedural protections in regard to his initial placement in Ad-Seg.

Plaintiff acknowledges he was present at the initial ICC review hearing which took place within seven days of his placement in Ad-Seg, and acknowledges he was informed he was to remain there due to marijuana having been found in a package of legal mail delivered to him pending a decision of the District Attorney whether to file criminal charges. (SAC at 6, 15; Opp. at 12.) He argues he was initially confused as to why he was placed in Ad-Seg, and was not officially notified of why he was there until his December 23, 2013 transfer from the Facility A Ad-Seg to the Facility C Ad-Seg. (Opp. at 26-28.) However, he admits he was present at the initial ICC review, spoke at the hearing, and prepared a written defense. (Id. at 12; SAC at 6, 15.) Rather than allege he was denied an opportunity to respond to the charge against him, he alleges he was not allowed to postpone the hearing in order to "make a proper defense," and was not provided with the assistance of an investigating employee in order to investigate the charge. (Id.) Those procedural protections were not required at that time. Toussaint, 801 F.2d at 1100-01 (holding prisoner is not entitled to "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation.") Plaintiff has not plausibly alleged, and cannot plausibly allege, a violation of due process in connection with his initial placement in Ad-Seg.

Defendants ask the Court to take judicial notice of the administrative record of the initial ICC hearing which is attached to the Motion to Dismiss as Exhibit A. (MTD at 17.) Defendants argue this is the only documentation regarding Plaintiff's disciplinary proceedings which Plaintiff did not attach to the Second Amended Complaint, and that the document shows Plaintiff did not request staff assistance at the initial ICC hearing, that he was informed of the reason why he was placed in Ad-Seg, and that an investigating employee was not assigned because no additional witness or documentation were requested. (Id.; MTD Ex. A at 1 [ECF No. 36-1 at 1].) It is not necessary for the Court to take judicial notice of this document for the resolution of this matter, because Plaintiff's own allegations and exhibits clearly demonstrate he received all the process he was due regarding his initial placement in Ad-Seg. The Court therefore recommends denying Respondent's request for judicial notice.

Accordingly, the Court finds Plaintiff has not plausibly alleged, and cannot further amend the Second Amended Complaint to plausibly allege, that he was denied due process in connection with his initial placement in Ad-Seg.

**b) retention in Ad-Seg pending disciplinary hearing**

Plaintiff alleges that Warden Miller appeared at the initial ICC hearing and informed the ICC that Plaintiff was not entitled to assignment of an investigating employee or a postponement of the hearing in order to prepare a proper defense because the matter had been submitted to the District Attorney to determine whether he would be criminally prosecuted. (SAC at 6.) Plaintiff alleges that on December 23, 2013, he was transferred from the Ad-Seg unit on Facility A to the Ad-Seg unit on Facility C, and at that time was issued, but refused to sign, a CDCR 114-D form which indicated he was placed in Ad-Seg pending an investigation into a conspiracy to introduce marijuana into the prison. (Id. at 15.) He states the District Attorney decided on March 18, 2014 not to prosecute due to insufficient evidence, and that he was released from Ad-Seg on April 16, 2014. (Id. at 15-16.)

/ / /

Following placement in segregated housing, prisoners are entitled to have prison authorities engage in some sort of periodic review of their confinement.  See Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983).  Plaintiff was in Ad-Seg for 7 days before his first ICC review, and remained there 154 additional days after that initial review until he was released following the District Attorney's decision not to file criminal charges.  The Ninth Circuit has held that there is no set constitutionally-required time limit between Ad-Seg placement reviews, but that a review every 120 days satisfies federal due process. Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990) ("[N]othing in the Constitution invests the district court with discretion to overrule the discretion of the prison officials on this administrative point.")  Plaintiff acknowledges that on December 23, 2013, he was issued a revised CDCR 114-D notice which clarified and confirmed the reason for his placement in Ad-Seg, and that the prison officials were not informed by the Department of Justice until March 6, 2014 that the contraband found in Plaintiff's legal mail tested positive for marijuana.  (Opp. at 13-14, 24.)  Thus, Plaintiff admits he was granted a review within 7 days of his placement in Ad-Seg, was issued a revised CDCR 114-D notice 39 days later, and was released 115 days later.  The Court finds Plaintiff has not alleged a due process violation arising from the failure to provide a review of his placement in Ad-Seg for: (1) the 7 days from his initial placement in Ad-Seg on November 7, 2013 to his first ICC hearing on November 14, 2013; or (2) the 39 days between his initial ICC hearing and the December 23, 2013, revised CDCR 114-D placement notification clarifying the reason for his placement in Ad-Seg; or (3) the 73 days from that revised placement notification until the suspected contraband was confirmed to be marijuana on March 6, 2014; or (4) even the 154 days between the initial ICC hearing and his release from Ad-Seg, because none of those intervals constituted an unreasonable length of time between reviews.  Id.; see also Hewitt, 459 U.S. at 477 n.9 ("[T]he decision to continue confinement of an inmate pending investigation of misconduct charges depends upon circumstances which prison officials will be well aware of - most typically, the progress of the investigation.")

Accordingly, the Court finds Plaintiff has not plausibly alleged, and cannot further amend the Second Amended Complaint to plausibly allege, that he was denied due process in connection to his retention in Ad-Seg.

### c) disciplinary hearing

When a liberty interest has been implicated as the result of a disciplinary charge, the Fourteenth Amendment requires prison officials to provide the prisoner with: (1) written notice of the charges at least 24-hours before the hearing; (2) the opportunity to appear in person at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders of the evidence relied on for their decision and the reasons for the action taken by the committee. Wolff, 418 U.S. at 564-66; Freeman v. Rideout, 808 F.2d 949, 952 (9th Cir. 1986) ("Although prisoners are entitled to be free from arbitrary action and conduct of prison officials, the protections against arbitrary action are the procedural due process requirements as set forth in Wolff v. McDonnell.") (internal quotation marks omitted).  Once these protections have been provided, due process is satisfied if there is any evidence in the record that could support the conclusion reached by the officials. Toussaint, 801 F.2d at 1104-05.

Plaintiff's own documents show he was given 24-hours advance notice of the hearing and was informed of the charge. (SAC Ex. A at 27-29 [ECF No. 10-1 at 28-30].) His documents also show he: (1) appeared in person at the hearing; (2) was granted his request to question reporting Correctional Officer Trujillo, who had opened the box of legal mail containing the marijuana and who testified at the hearing that Plaintiff never took possession of the legal mail or the contraband it contained; and (3) was allowed to present rebuttal evidence in the form of his sworn, written declaration. (Id.) Finally, the documents attached to the SAC show Plaintiff was given a written statement by the factfinders of the evidence relied on for their decision, and the reason why he was found not guilty, i.e., "the written and material evidence presented at this hearing is insufficient to support the charge." (Id.) Accordingly, Plaintiff was provided all the process he was due in connection with his disciplinary hearing. Wolff, 418 U.S. at 564-66.

Plaintiff alleges the disciplinary hearing was not held within 30 days of the decision not to charge him with a criminal offense as required by prison regulations. (SAC at 6.)  Defendants acknowledge prison regulations required the hearing to be held within 30 days of the decision not to charge him with a criminal offense, and that the hearing was held on the 31st day after that decision, one day late.  (MTD at 19-20.) Defendants correctly argue that the one-day delay does not implicate or violate federal due process.  See Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989) (holding that a prison's failure to meet its own requirement that a hearing is to be held within eight days of charge would not alone constitute a denial of due process).

Accordingly, because it is clear Plaintiff was provided with all the procedural protections due him in connection with his disciplinary hearing, the Court finds he has not plausibly alleged, and cannot further amend the Second Amended Complaint to plausibly allege, that he was denied due process in connection with his disciplinary hearing.

**d)  summary**

The Court finds that assuming Plaintiff has or could allege facts which give rise to a liberty interest in remaining free of his temporary stay in Ad-Seg, he has not plausibly alleged facts showing his Fourteenth Amendment right to due process was violated in connection with the deprivation of such a liberty interest or in his disciplinary hearing.  The Court therefore recommends granting Defendants' Motion to Dismiss the Second Amended Complaint on this ground.  Johnson, 534 F.3d at 1121-22 ("A Rule 12(b)(6) dismissal may be based on . . . 'the absence of sufficient facts alleged under a cognizable legal theory.'"), quoting Balistreri, 901 F.2d at 699.  Plaintiff has already twice amended his complaint in this action after twice being informed of the required pleading standards (ECF Nos. 7-10), and it is now clear he is unable to further amend his complaint to plausibly allege a deprivation of due process in connection with his placement and retention in Ad-Seg, or in his subsequent disciplinary hearing.  The Court / / /

therefore recommends the Second Amended Complaint be dismissed with prejudice and without further leave to amend.

## IV.   Conclusion and Recommendation

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that judgment be entered granting Defendant's Motion to Dismiss and dismissing Plaintiff's Second Amended Complaint with prejudice.

**IT IS ORDERED** that no later than **March 11, 2016** any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 18, 2016**.  The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**DATE**:  February 23, 2016          _____

                              **JAN M. ADLER**
                        **United States Magistrate Judge**